**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

MARIE N. MILLS, individually and as )
Co-Personal Representative of the Estate of )
Medric C. Mills, Jr., and on behalf of )
SANDRA ANN MILLS )
1221 Hamilton Street NE )
Washington, DC 20011 )
)
and )
)
MEDRIC C. MILLS, III, individually and as )
Co-Personal Representative of the Estate of )
Medric C. Mills, Jr., and on behalf of )
SANDRA ANN MILLS )
1221 Hamilton Street NE )
Washington, DC 20011 )
)
              Plaintiffs, )
)
v. )
)
DISTRICT OF COLUMBIA )
)
Serve:      Muriel Bowser, Mayor )
            John A. Wilson Building )
            1350 Pennsylvania Avenue NW )
            Washington, DC 20004 )
)
            Karl Racine, Attorney General )
            John A. Wilson Building )
            1350 Pennsylvania Avenue NW )
            Washington, DC 20004 )
)
and )
)
KELLENE DAVIS, individually and in )
her official capacity )
4103 4th Street NW )
Washington, DC 20011 )
)
and )
)

GEORGE R. MARTIN, individually and in )
his official capacity )
1421 Lehman Court )
Annapolis, MD  21409 )
)
and )
)
DAVID RICHARD DENNIS, individually and in )
his official capacity )
21013 Insley Drive )
Tyaskin, MD  21865 )
)
and )
)
GARRETT THOMAS MURPHY, individually )
and in his official capacity )
260 Reeser Driver )
York Haven, PA  17370 )
)
and )
)
REMY JONES, individually and in )
his official capacity )
139 49th Street NE )
Washington, DC 20019 )
)
and )
)
JANE DOE # 1, individually and in )
her official capacity )
Office of Unified Communications )
2720 Martin Luther King, Jr. Avenue, S.E. )
Washington, DC  20032 )
)
and )
)
JANE DOE # 2, individually and in )
her official capacity )
Office of Unified Communications )
2720 Martin Luther King, Jr. Avenue, S.E. )
Washington, DC  20032 )
)
and )
)

JANE DOE # 3, individually and in           )
her official capacity                       )
Office of Unified Communications            )
2720 Martin Luther King, Jr. Avenue, S.E.   )
Washington, DC  20032                       )
                                            )
and                                         )
                                            )
JANE DOE # 4, individually and in           )
her official capacity                       )
Office of Unified Communications            )
2720 Martin Luther King, Jr. Avenue, S.E.   )
Washington, DC  20032                       )
                                            )
              Defendants.                   )

## COMPLAINT

COMES NOW, the Plaintiffs, Marie N. Mills and Medric C. Mills III, individually and as

co- personal representatives of the Estate of Medric C. Mills, Jr., and moves this Honorable

Court for judgment against Defendants, District of Columbia, Kellene Davis, George R. Martin,

David Richard Dennis, Garrett Thomas Murphy, Remy Jones, Jane Doe #1, Jane Doe #2, Jane

Doe #3, and Jane Doe #4 and states for reasons as follows:

## JURISDICTION

1.      Jurisdiction is invoked over Defendants pursuant to D.C. Code §§ 11-921, (2001

Edition, as amended).  This action is brought pursuant to D.C. Code § 12-101, *et. seq*., D.C.

Code § 16-2701, *et. seq*., D.C. Code §§ 13-422, 13-423; 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

## PARTIES

2.      Plaintiff Marie N. Mills is the daughter of Medric Cecil Mills, Jr. and is co-

personal representative of the Estate of Medric C. Mills, Jr. and brings this action on her own

3

behalf and on behalf of all beneficiaries of her Father's Estate, including her brother, Medric Cecil Mills, III, and her mother, Sandra Ann Mills.

3.      Plaintiff Medric C. Mills, III, is the son of Medric C. Mills, Jr. and is co-personal representative of the Estate of Medric C. Mills, Jr., and brings this action on his own behalf and on behalf of all beneficiaries of his Father's Estate, including his sister, Marie N. Mills, and his mother, Sandra Ann Mills.

4.      At all times relevant, decedent Medric Cecil Mills, Jr. was 77 years old, married to Sandra Ann Mills and together they were the parents of Marie N. Mills and Medric Cecil Mills, III.

5.      Sandra Ann Mills is the wife of decedent Medric Cecil Mills, Jr. and they were legally married at all times relevant.

6.      Defendant District of Columbia (DC) was, at all times relevant, a municipality and the employer of Defendants Lt. Kellene Davis, George Martin, David Dennis, Garrett Murphy, Remy Jones, Jane Doe #1, 2, 3, and 4 and is responsible for the wrongful conduct and constitutional violations of these Defendants.

7.      At all times relevant, Defendant District of Columbia was responsible for creating policies, procedures, authorized practices and general rules for the delivery of pre-hospital emergency medical services in the District of Columbia, individually and through its agents, servants and employees.

8.      At all times relevant, Defendant District of Columbia was responsible for providing medical oversight for all aspects of pre-hospital emergency medical care in the District of Columbia and for providing pre-hospital medical care and transport within the geographic

4

boundaries of the District of Columbia, individually and through its agents, servants and employees.

9.     Defendant Lt. Kellene Davis was, at all times relevant, an employee, servant and/or agent of the District of Columbia and was a state actor operating and acting under color of District of Columbia Law.  At all times relevant, Defendant Lt. Kellene Davis was a sworn officer or member who worked within D.C. Fire and Emergency Medical Services Department (hereinafter "DC FEMS") as a firefighter/EMT/paramedic and on January 25, 2014 she was the officer in charge on duty.

10.     Defendant George R. Martin was, at all times relevant, an employee, servant and/or agent of the District of Columbia and was a state actor operating and acting under color of District of Columbia Law.  At all times relevant, Defendant Martin was a sworn officer or member who worked within D.C. Fire and Emergency Medical Services Department (hereinafter "DC FEMS") as a firefighter/EMT/paramedic.

11.     Defendant David Richard Dennis was, at all times relevant, an employee, servant and/or agent of the District of Columbia and was a state actor operating and acting under color of District of Columbia Law.  At all times relevant, this Defendant was a sworn officer or member who worked within D.C. Fire and Emergency Medical Services Department (hereinafter "DC FEMS") as a firefighter/EMT/paramedic.

12.     Defendant Garrett Thomas Murphy was, at all times relevant, an EMT, employee, servant and/or agent of the District of Columbia and was a state actor operating and acting under color of District of Columbia Law.  At all times relevant, this Defendant was a sworn officer or member who worked within D.C. Fire and Emergency Medical Services Department (hereinafter "DC FEMS") as a firefighter/EMT/paramedic.

13.     Defendant Remy Jones was, at all times relevant, an EMT, employee, servant and/or agent of the District of Columbia and was a state actor operating and acting under color of District of Columbia Law.  At all times relevant, Defendant Jones was a sworn officer or member who worked within D.C. Fire and Emergency Medical Services Department (hereinafter "DC FEMS") as a firefighter/EMT/paramedic.

14.     Defendant Jane Doe #1 was, at all times relevant, an employee, servant and/or agent of the District of Columbia, a state actor operating and acting under color of District of Columbia law and was a sworn officer or member who worked at the Office of Unified United Communications Command (OUC), in the "911" call center as a 911 call taker.

15.     Defendant Jane Doe #2 was, at all times relevant, an employee, servant and/or agent of the District of Columbia, a state actor operating and acting under color of District of Columbia law and was a sworn officer or member who worked at the Office of Unified United Communications Command (OUC), in the "911" call center as the lead fire dispatcher.

16.     Defendant Jane Doe #3 was, at all times relevant, an employee, servant and/or agent of the District of Columbia, a state actor operating and acting under color of District of Columbia law and was a sworn officer or member who worked at the Office of Unified United Communications Command (OUC), in the "911" call center as an EMS radio operator.

17.     Defendant Jane Doe #4 was, at all times relevant, an employee, servant and/or agent of the District of Columbia, a state actor operating and acting under color of District of Columbia law and was a sworn officer or member who worked at the Office of Unified United Communications Command (OUC), in the "911" call center as an EMS radio operator.

## FACTS

Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 17 and further allege:

18.     On the afternoon of January 25, 2014, Medric C. Mills, Jr. was walking with his daughter, Plaintiff Marie N. Mills, toward the parking lot of the Brentwood Shopping Center at 1309 Rhode Island Avenue NE, Washington, DC 20018.

19.     The parking lot is directly across the street from FEMS Engine House 26, located at 1340 Rhode Island Avenue NE, Washington, DC 20018.

20.     As Mr. Mills and his daughter approached the parking lot around 2:30 pm or so, Mr. Mills collapsed.  He was conscious, awake, but breathing with some difficulty.

21.     Marie N. Mills ran into a nearby computer shop for help.  911 was called by the shop owner and Marie Mills ran outside to be with her father.

22.     The District of Columbia OUC received the call for an unconscious person in the parking lot of the Brentwood Shopping Center, 1309 Rhode Island Avenue, N.E.

23.     The 911 call taker failed to ascertain the quadrant address and assigned the call to the Northwest quadrant of the city.

24.     While the caller was on the line, Jane Doe #1, the 911 call taker repeated the wrong address and was immediately corrected that the quadrant address was Northeast and NOT Northwest.

25.     Jane Doe #1, the call taker corrected the error in the system but the lead dispatcher, Jane Doe #2 and the two (2) radio operators, Jane Doe #3 and Jane Doe #4, failed to take note of the updated correct quadrant even though the change was identified by a highlighted

red box icon on the computer screen and was visually displayed in bold black letters on a screen directly in front of the senior officer.

26.     As such, Jane Doe #2, lead dispatcher failed to dispatch the appropriate units to the correct location.

27.     The ambulance dispatched by OUC (911) in response to the first call did not notice the corrected address until they arrived at 1309 Rhode Island Avenue, N.W. – the wrong address.

28.     A second 911 call was received by the Jane Doe #2, the lead dispatcher for 1311 Rhode Island Avenue, N.E. The lead dispatcher, Jane Doe #2, saw the new event with the updated address and deemed it a duplicate of the original event and cancelled the second event. As a result, no additional units were dispatched.

29.     Meanwhile, multiple District residents ran across the street to the front door of Engine House 26 to request emergency medical assistance for Mr. Mills.

30.     At all times during this medical emergency, five individual employees of DC FEMS were present at Engine House 26: Defendants firefighter/EMT/paramedic, Lt. Davis, George Martin, David Dennis, and Garrett Murphy, and Remy Jones.

31.     At all times relevant, Defendants Lt. Davis, Martin, Dennis, Murphy and Jones were trained and/or certified in CPR.

32.     At all times relevant, Defendants Lt. Davis, Martin, Dennis, Murphy and Jones were trained and/or certified in the operation of an AED.

33.     Upon information and belief, at all times relevant, an AED was present and available for use during this medical emergency by Defendants Lt. Davis, Martin, Dennis, Murphy and Jones.

8

34.    At all times during this medical emergency, Defendant Jones was manning the watch desk in the front of the station, Defendant Lt. Davis was inside her bunkroom and Defendants Martin, Murphy and Dennis were in the kitchen sitting area.

35.    In response to the multiple requests for emergency medical assistance, Defendant Jones directed each citizen to call 911 and advised that the five (5) defendant firefighter/EMT/paramedic could not help because they had not been dispatched to the scene.

36.    At some point, Defendant Jones placed a call over the Public Announcement (PA) system asking Defendant Lt. Davis, the officer in charge, to report to the watch desk. Defendant Lt. Davis failed to respond.

37.    Thereafter, Defendant firefighter/EMT Jones placed a second call over the PA system asking for Defendant Lt. Davis to come to the floor, indicating this time that the matter was urgent. Again, Defendant Lt. Davis failed to respond.

38.    At the time Defendant Jones made the 1st and 2nd call over the PA system, the PA system in various fire station rooms had been manually shut off. All that was required to turn the speakers back on was pressing a button on a touch screen system.

39.    At the time Defendant Jones made the 1st and 2nd call over the PA system, Defendants Murphy, Dennis and Martin were sitting or preparing a meal in the fire station kitchen. All three heard Defendant Jones' 1st and 2nd calls for help over the PA system.

40.    After discussion with Defendants Martin and Dennis, Defendant Murphy, who had heard both of Defendant Jones' calls over the PA system in the kitchen area, walked to the watch desk to ask Defendant Jones what was going on. Defendant Jones advised Defendant Martin that citizens had come to the fire station requesting help because there was a man "down" across the street.

41.     Defendant firefighter/EMT Murphy erroneously told Defendant Jones that they would have to inform Defendant Lt. Davis before any emergency assistance could be administered, because they had not been officially dispatched to the call.

42.     Defendant firefighter/EMT Murphy and Defendant Jones knew or should have known that at all times they had the authority and duty to place Engine House 26 fire station on the call and render aid to Mr. Mills.

43.     Defendant Jones has admitted he was not trained to perform watch duty, man the desk to receive walk in requests for emergency medical care; did not know what to do in this situation and that fear of being fired kept him from taking any action.

44.     Defendant firefighter/EMT Murphy subsequently went to Defendant Lt. Davis' bunkroom to alert her to the emergency situation across the street "on the 1300 block of Rhode Island Avenue NE," but Defendant Lt. Davis instructed Defendant Murphy to ascertain the exact address and report back to her before any emergency assistance would be rendered.

45.     Defendant Davis has since admitted that an exact address was not required.

46.     Defendant firefighter/EMT Murphy failed to provide Defendant Lt. Davis with an exact address. Instead, he went back to the kitchen, sat down, and reported to Defendants Martin and Dennis that a man was down across the street. Thereafter he exited the fire station, went to his personal car, gathered personal items and text books from his car, walked back inside, and went to his bunkroom to study for a promotion exam.

47.     Despite knowing that a man was down directly across the street, at no point did Defendants Lt. Davis, Murphy, Dennis, Martin and Jones, the five (5) Defendant firefighters/EMTs who were inside Engine House 26 while Mr. Mills lay dying across the street

10

in front of the fire station, attempt to render or actually render any emergency medical care or treatment to Mr. Mills.

48.     At all times relevant, Defendants Lt. Davis, Murphy, Dennis, Martin and Jones, the five (5) Defendant firefighters/EMTs who were inside Engine House 26 were trained in the use of an Automated External Defibrillator (AED).

49.     An AED, or Automated External Defibrillator, is a portable and easy-to-use device designed to analyze the heart's cardiac rhythm and administer a dose of electricity if needed to victims suffering from sudden cardiac arrest. AEDs have been proven to increase the survival rate of victims of sudden cardiac arrest up to 90%.

50.     A Metropolitan Police Officer who responded to the first 911 call flagged down Ambulance 12, an ambulance that just happened to be passing by en route to another call.

51.     Once on the scene, the paramedics of Ambulance 12 found Mr. Mills to be unconscious, unresponsive, not breathing and observed that he had no discernable pulse.

52.     Thereafter, Mr. Mills was transported to Washington Hospital Center.

53.     At 3:12 p.m., Mr. Mills arrived at Washington Hospital Center without a pulse.

54.     At 3:38 p.m., Mr. Mills was pronounced dead.

55.     The Public Access to Automated External Defibrillator Act of 2000 requires DC Fire/EMS to establish processes and procedures to register Public Access to Defibrillator Programs and become the repository of all pertinent data about AED use in the District.

56.     Under the DC Public Access to Automatic External Defibrillator Act of 2000, all first responders in DC Fire and EMS are to be trained to use AEDs. They are carried on all the medical response apparatus units.

57.     Under the DC Public Access to Automatic External Defibrillator Act of 2000, all field medical providers in DC Fire and EMS are to be trained to use AEDs.

58.     The reason for this District of Columbia statute and why all D.C. field medical providers are required to be trained is because without early intervention, only 5-10% of those who suffer sudden cardiac arrest survive. Time is critical; survival rates decrease 7-10% with every minute that treatment is delayed. CPR is not enough; immediate defibrillation is the most effective treatment within the first few minutes of arrest.

59.     On July 18, 2014, Plaintiffs sent a Notice of Claim pursuant to D.C. Code § 12-309 to the District of Columbia, Office of Risk Management, ATTN: Claims, 441 4th Street NW, Suite 800 South, Washington, DC 20001.

**COUNT I**
**VIOLATION OF 42 U.S.C. § 1983: FAILURE TO TRAIN**
**(DISTRICT OF COLUMBIA)**

Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 59 above and further alleges:

60.     Under D.C. Coder § 1–501, [a]ll civil officers in the District shall, before they act as such, respectively take and subscribe an oath or affirmation to support the Constitution of the United States, and faithfully to discharge the duties of their respective offices; and the oath or affirmation provided for by this section shall be taken and subscribed, certified, and recorded, in such manner and form as may be prescribed by law.

61.     As such, the District of Columbia required its DC FEMS employees, members and officers to take the following sworn oath: to "faithfully execute the laws of the United States of America and the District of Columbia and … to the best of [their] ability, preserve, protect

12

and defend the Constitution of the United States, and [to] faithfully discharge the duties of the office . . ."

62.     Under D.C. Code Section 5-401(b) "[t]he Department had a statutory duty to provide pre-hospital medical care and transport within the geographical boundaries of the District of Columbia."

63.     Under D.C. Code § 5–441 the District of Columbia acting through "[t]he Chief of the Fire and Emergency Medical Services Department had a duty to design an education and training program that encompasses entry-level and in-service training and addresses issues such as ... emergency medicine skills for target audiences, such as persons with disabilities, the elderly, [like Mr. Mills] and very young. The education and training program shall be based upon the department's mission and operational performance measures."

64.     As such, the District of Columbia owed a duty to Mr. Mills to provide pre-hospital medical care and transport to Mr. Mills and to train its sworn members and officers who took a sworn oath to uphold the United States Constitution.

65.     The District of Columbia acting individually and through its employees breached its statutory duty and sworn oath to Medric Cecil Mills, Jr. These breaches caused Mr. Mills' death.

66.     The District of Columbia's DC FEMS department has long engaged in a historic pattern and practice of substandard delivery of pre-hospital emergency medical care and a pervasive culture of deliberate indifference to the rights of District residents in the delivery of pre-hospital emergency medical care and practice.

13

67.     Long before January 25, 2014, the District of Columbia knew its DC FEMS employees and EMTs needed training in the delivery of pre-hospital medical care and transport within the DC geographical borders and has long ignored this obvious need.

68.     Eight (8) years ago, in January of 2006 the District of Columbia's Emergency Medical Services made national news when a New York Times Journalist, David Rosenbaum was assaulted on the streets of the Nation's capital, and died after he allegedly received substandard emergency medical care from DC FEMS EMTS.

69.     Then Inspector General Charles J. Willoughby called the DC FEMS response to Mr. Rosenbaum "an unacceptable chain of failure in the provision of emergency medical and other services" that suggests an "alarming level of complacency and indifference."

70.     Mr. Rosenbaum's family joined several experts and stake holders to form a Task Force, which produced a report in 2007 offering recommendations for improving the District's emergency medical services.  Although the D.C. Council passed some legislation, many of these recommendations have gone unheeded, and more DC residents have been injured or died.

71.     In April 2008, Jeremy Miller, a 35 year old District resident, died after DC FEMS responders reportedly went to the wrong address after a 911 dispatch took 34 minutes to reach him.

72.     In December 2008, Edward Givens, a 39 year old District resident and father of two, died of a heart attack two hours after he was reportedly told by EMTs to take Pepto Bismol when he reported chest pain and trouble breathing.

73.     In April 2008, Jeremy Miller, a 35 year old District resident, died after DC FEMS responders reportedly went to the wrong address after a 911 dispatch and took 34 minutes to reach him.

74.    In December 2009, Phyllis Woods died of a stroke after she was reportedly told by EMTs that she was just experiencing withdrawal symptoms as a result of her decision to quit smoking.

75.    On New Year's Eve, 2012, when over 100 DC FEMS personnel had called in sick, Durand Ford, Sr. died after allegedly waiting thirty to forty minutes before an ambulance finally arrived from Prince George's County, Maryland.

76.    In February 2013, no ambulance could be located to transport a D.C. police officer who was a victim of a hit and run accident. An ambulance from Prince George's County, Maryland, had to be dispatched to assist the policeman. DC FEMS had 39 units staffed that night, and 10 were out of service. "A couple" more could not be located by the department.

77.    In March 2013, no ambulance could be located to transport a patient with a stroke. The individual was transported to a hospital aboard a fire truck. Then Fire Chief Ellerbe admitted that DC FEMS was at a "tipping point" in terms of staffing (and claimed it had been for two years), and ordered at least two reserve ambulances to be on duty at all times. An investigation revealed that one paramedic and two EMT crews failed to follow procedures and should have been able to respond. The three D.C. crews and a supervisor were disciplined but people have continued to die.

78.    In March 2013, then Fire Chief Ellerbe acknowledged that ambulance response times to medical emergencies have been unacceptable in a growing number of incidents across the city.

79.    Before January 25, 2014, the District of Columbia knew that in addition to providing substandard care, that DC FEMS/EMTs/paramedics were not responding appropriately

to non-traditional and non-dispatched requests for pre-hospital emergency assistance and DC residents were suffering harm and of at least one death.

80.     The District of Columbia knew, before January 25, 2014, that DC FEMS EMT paramedics were instructing District residents to call 911 rather than actually providing medical care when requests for help were received through non-traditional means, such as requesting help directly from the fire station.

81.     The District of Columbia and high ranking officials knew before January 25, 2014 that DC FEMS/EMTs/paramedics were not responding to non-dispatched requests for pre-hospital emergency medical care.

82.     On May 16, 2009, 37 year old Andre P. Rudder drove to DC FEMS Engine 7 in Southwest Washington, DC to seek emergency medical assistance because he was having chest pain and difficulty breathing.  Upon information and belief, a paramedic or EMT called 911, but provided no care.  Mr. Rudder reportedly sat in his car alone without any medical assistance or monitoring until an ambulance arrived 10-20 minutes later.  Thereafter, he was pronounced dead at George Washington University Hospital.

83.     The District of Columbia and high ranking officials knew before Mr. Mills' collapse and death, that the problem handling non-traditional and non-dispatched calls continued in 2014 and that DC FEMS/EMTs/paramedics were still instructing District residents to call 911 rather than actually providing medical care when emergency service was sought through non-dispatched non-traditional means.

84.     On January 5, 2014, Assistant Fire Chief Eugene Jones wrote a memorandum to five (5) Deputy Fire Chiefs at DC FEMS and the first topic was "Citizens Request for Service". Assistant Fire Chief Jones noted "[w]e are experiencing breakdowns when receiving calls for

assistance other than through traditional means. Our normal course of receiving dispatch information or emergency assignments is well documented and expectations are well defined. However, we have seen that personnel who receive non-traditional alerts for assistance are acting rigidly and are not being sensitive to the requests or needs of the citizen or OUC (Like today's box in the 4th Rhode Island Avenue case, 1300 Queen Street). The public is not bound to follow a rigid set of protocols to request our assistance. When we find that a citizen is "seeking assistance" we shall be responsive. If the request is an "emergency" in nature we shall respond appropriately."

85. Clearly acknowledging the continued problem with non-traditional and non-dispatched request for emergency help, Assistant Fire Chief Eugene Jones cites a crisis in leadership and employs his staff to lead.

86. Assistant Fire Chief Eugene Jones does not recommend training of DC FEMS/EMTs/paramedics or recommend any action to remedy the obvious risk of harm and consequences if DC FEMS/EMTS/paramedics continued this course of conduct. Nor did Assistant Fire Chief Jones take steps or recommend action to document and define expectations when DC FEMS received non-traditional alerts/requests for emergency medical assistance.

87. The District of Columbia's failure to adequately train its DC FEMS employees to provide standard care to respond to non-traditional/non-dispatched requests for emergency assistance and complete disregard for this known and obvious risk of harm, manifest deliberate indifference to the rights of those persons, like Mr. Mills, who would be negatively impacted by contact with the inadequately trained employees, including Defendants Lt. Davis, Murphy, Martin, Dennis and Jones.

17

88.    The District of Columbia's long standing acceptance and allowance of a culture of carelessness; historic pattern and practice of substandard delivery of pre-hospital emergency medical care; and practice and custom of directing those who seek pre-hospital emergency medical services through non-traditional and non-dispatched alerts/requests to call 911 rather than actually providing emergency care became DC policy, custom and practice.

89.    The District of Columbia's failure to hold its DC FEMS employees accountable in any meaningful way for substandard care; defense of such care by invoking the public duty doctrine; failure to adequately train its DC FEMS employees to provide standard care, including when to employ the use of an AED in the field; failure to adequately train its DC FEMS/EMTs to actually respond to non-traditional and non-dispatched request for emergency care, including the knowledge of when an AED should be used, impliedly condoned such conduct and was tantamount to an adoption of the wrongful conduct.

90.    District of Columbia high ranking officials and officers have known of this policy, custom and practice by DC FEMS/EMTs/paramedics since at least May 16, 2012 when Andre Rudder south help at a DC FEMS fire station and knew that it continued to be a problem some 20 days before the decedent's collapse and death on January 25, 2014, yet took no action.

91.    The District of Columbia's policy, practice and custom caused Medric Cecil Mills, Jr. to suffer a deprivation of his constitutional rights under the substantive due process clause of the 5th Amendment of the U.S. Constitution and was a substantial factor and a proximate cause of the death of Medric Cecil Mills, Jr.

92.    At all times relevant, the failure to render emergency medical care by Defendants Lt. Davis, George Martin, David Dennis, Garrett Murphy and Remy Jones was caused by the District of Columbia's policy, practice and custom as set forth herein and failure to adequately

train DC FEMS EMTs to respond to non-traditional and non-dispatched request for emergency help.

93.     At all times relevant, the conduct of Defendants Lt. Davis, Murphy, Martin, Dennis and Jones in wrongly directing residents reporting Mr. Mills' medical emergency to call 911 rather than actually rendering aid was the result of a policy statement, regulation or decision officially adopted and promulgated by DC FEMS, or other District of Columbia officials, or the result of DC FEMS's practice and custom, and was a substantial factor and a proximate cause of Mr. Mills' death.

94.     This DC FEMS policy, practice and custom was a "moving force" behind the deprivation of Mr. Mills' constitutional rights by Defendants Lt. Davis, Martin, Murphy, Dennis and Jones; and the violation of 42 U.S.C. § 1983, which resulted in his death and the injuries and damages to his family and beneficiaries.

95.     Prior to January 25, 2014, Defendant District of Columbia knew that its communication employees, including Jane Doe #1, 2, 3, and 4 who worked at the Office of Unified Communications were not assigning the appropriate unit to the correct quadrant of the city when pre-hospital emergency medical assistance was requested and that this posed an unacceptable risk of harm to those it was charged to serve.

96.     Prior to January 25, 2014, Defendant District of Columbia and its high ranking officials knew that ambulance response times were too long.

97.     Nonetheless, the District of Columbia failed to adequately train its Office of Unified Communications employees, including Jane Doe #1, 2, 3, and 4, to process calls to minimize the known and obvious risks of harm if ambulances and EMTs were dispatched to the wrong location and ambulance response times were too long.

98.    The District of Columbia's failure to adequately train its Office of Unified Communications employees, including Jane Doe #1, 2, 3 and 4, was a complete disregard for an obvious and known risk posed by sending an ambulance to the wrong address and increasing response times which manifests deliberate indifference to the rights of those persons like Mr. Mills, who would be negatively and fatally impacted by contact with the District of Columbia's inadequately trained employees, including Jane Doe #1, 2, 3 and 4.

99.    This practice, policy, custom, deliberate indifference and failure to remedy by the District of Columbia violated the U.S. Constitution and Mr. Mills' 5th Amendment substantive due process constitutional rights.

100.    The District of Columbia's failure to train its DC Office of Unified Communications employees, Jane Doe #1, 2, 3, and 4, was a proximate cause of the violations of Mr. Mills' constitutional right to life and liberty resulting in the death of Medric Cecil Mills, Jr.

101.    If the District of Columbia had adequately trained the employees of OUC, including Defendants Jane Doe #1, 2, 3 & 4, to send the ambulance to the correct address, thereby reducing response times among other things, Mr. Mills likely would not have suffered constitutional violations and violations of 42 U.S.C. § 1983, and died on the streets of the District of Columbia on January 25, 2014.

102.    If the District of Columbia had adequately trained the employees of DC FEMS, including Defendants Lt. Davis, Murphy, Martin, Dennis and Jones to respond to a non-traditional and non-dispatched emergency medical requests, when to use an AED among other things, Mr. Mills likely would not have suffered constitutional violations and violations of 42 U.S.C. § 1983, and died on the streets of the District of Columbia on January 25, 2014.

20

103.   As a state actor, the District of Columbia has exhibited a pattern or practice of subjecting District citizens to repeated instances of grossly substandard responses to ongoing medical emergencies.

104.   The District of Columbia's failure to train and implicit adoption of this policy, custom and practice by firefighters/EMTs/paramedics of turning away non-traditional/non-dispatched request for emergency aid and directing the requester to call 911 rather than actually rendering emergency care are such an anathema to the concept of ordered liberty implicit in the due process clause of the U.S. Constitution that this conduct can fairly be said to shock the contemporary conscience and violate 42 U.S.C. § 1983.

105.   The District of Columbia's failure to train and implicit adoption of this policy, custom and practice of sending ambulances to the wrong address thereby increasing response times are such an anathema to the concept of ordered liberty implicit in the due process clause of the U.S. Constitution that this conduct can fairly be said to shock the contemporary conscience and violate 42 U.S.C. § 1983.

106.   The tragic results of District of Columbia policy, practice and custom, have been well-publicized, putting the public officials of the District of Columbia on actual notice of these constitutionally deficient patterns, practices, customs and policies of providing substandard medical care, sending ambulances to the wrong address thereby increasing response times and EMTs/paramedics turning residents away and instructing them to call 911 rather than actually providing care.

107.   In the face of that knowledge, the District of Columbia has failed to act in any meaningful way to rectify, curb, improve or otherwise address this unconstitutional pattern, practice, custom and policy by, among other things: (1) failing to curb poor training practices;

(2) failing to adequately train OUC employees to reduce response times and send and arrive at the correct address timely; (3) failing to address incompetent leadership; (4) failing to ensure proper allocation and appropriate execution of duties among employees so as to avoid confusion and delay in responding to emergency situations; (5) failing to enact clear-cut protocols for responding to emergency situations to which DC FEMS has not yet been officially dispatched; and (6) otherwise failing to appropriately ensure that District of Columbia citizens, including Mr. Mills, were not allowed to suffer while employees of DC FEMS and OUC are not held accountable for their wrongful acts.

108.   By failing to act, the District of Colombia has been "deliberately indifferent" to the near certain likelihood that the continuation of this DC FEMS pattern, practice, custom or policy as outlined above would result in further constitutional harms to citizens of the District, including Medric Cecil Mills, Jr.

109.   The continuation and execution of this pattern, practice, custom or policy was the cause of Mr. Mills' constitutional violations, and injuries, including his death.

110.   If the District had at any time intervened to meaningfully to hold DC FEMS and OUC employees accountable in the past and taken steps to rectify this pattern, practice, custom or policy of shockingly substandard, careless, indifferent and callous emergency medical responses, five (5) Defendants in the fully staffed DC FEMS Engine House 26 located directly across the street would have known to respond immediately to aid Mr. Mills and the ambulance or medic unit more likely than not would have arrived timely to the correct address and prevented the violations to Mr. Mills constitutional rights and would have prevented his death on the streets of D.C.

WHEREFORE, Plaintiffs respectfully demands judgment against the Defendant District of Columbia, jointly and severely, in the full and just amount of Seven Million Seven Hundred Thousand Dollars ($7,700,000.00), plus interests and costs.

## COUNT II
## VIOLATION OF 42 U.S.C. § 1983
## (DEFENDANTS LT. DAVIS, MURPHY, MARTIN, DENNIS, JONES)

Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 110 above and further alleges:

111.   At all times relevant, and on January 25, 2014, Defendants Lt. Davis, Murphy, Martin, Dennis and Jones had a sworn duty to "faithfully execute the laws of the United States of America and the District of Columbia and . . . to the best of [their] ability, preserve, protect and defend the Constitution of the United States, and [to] faithfully discharge the duties of the office . . ."

112.   At all times relevant and on January 25, 2014 Defendants Lt. Davis, Murphy, Martin, Dennis and Jones had a duty to deliver pre-hospital emergency medical care to persons known to be in need, regardless of whether they were dispatched to the scene.

113.   At all times relevant and on January 25, 2014 as DC FEMS employees firefighter/EMT/paramedic in their official capacities and individually, Defendants Lt. Davis, Murphy, Martin, Dennis and Jones had a duty to deliver pre-hospital emergency medical care when a report was made directly to a DC fire station and to DC FEMS firefighters, EMTs, and paramedics, including Defendants Lt. Davis, Murphy, Martin, Dennis and Jones.

114.   Defendants Lt. Davis, Murphy, Martin, Dennis and Jones acting under color of DC law, breached their duty to uphold the laws of the United States, the District of Columbia, to

preserve, protect the U.S. Constitution and to deliver pre-hospital emergency medical care on

January 25, 2014, when decedent Medric Cecil Mills, Jr. needed life-saving help.

     115.    At all times relevant on January 25, 2014, acting under color of DC law,

Defendants Lt. Davis, Murphy, Martin, Dennis and Jones actually knew that "a man was down"

across the street from the fire station, and was in need of emergency medical care yet, each failed

to render pre-hospital emergency medical care to Medric Cecil Mills, in violation of Mr. Mills'

constitutional rights, to life and liberty.

     116.    At all times relevant on January 25, 2014, acting under color of DC law,

Defendants Lt. Davis, Murphy, Martin, Dennis and Jones adhered to District of Columbia policy,

practice and custom and wrongfully directed residents reporting Mr. Mills' medical emergency

to call 911 rather than actually rendering aid because the five (5) Defendant

firefighters/EMTs/paramedics could not help because they had not been officially dispatched to

the scene. Defendant Jones turned residents away and directed them to call 911 rather than

actually provide emergency medical care and Defendants Lt. Davis, Murphy, Martin and Dennis

did nothing because they were not dispatched to the call although each actually knew that "a man

was down" across the street from the fire station, and was in need of emergency medical care.

     117.    Acting with deliberate indifference to the known consequences of their inaction

and with a complete and utter conscious disregard for the life of Medric Cecil Mills, Jr., the man

known to be down, Defendants Lt. Davis, Murphy, Martin, Dennis and Jones either laid in their

bunks, studied for a promotion exam, sat in the kitchen and/or actually watched the medical

emergency unfold directly across the street from the fire station without rendering any assistance.

     118.    At all times relevant on January 25, 2014, acting under color of DC law,

Defendants Lt. Davis, Murphy, Martin, Dennis and Jones knew that there was a high likelihood

of serious injury or death in the face of continued inaction, and despite this knowledge, continued to do nothing while hiding behind the District of Columbia's constitutionally infirm policy, practice and custom.

119.    At all times relevant on January 25, 2014, acting under color of DC law, Defendants Lt. Davis, Murphy, Martin, Dennis and Jones knew or should have known that with their continued inaction, there was a high likelihood that they would violate their sworn duty, violate their duty to deliver pre-hospital care, and violate the constitutional rights to life and liberty of Medric Cecil Mills, Jr. and despite this knowledge did nothing which was a proximate cause of the death of Medric Cecil Mills, Jr.

120.    The wrongful conduct and deliberate indifference of Defendants Lt. Davis, Murphy, Martin, Dennis and Jones violated the constitutional civil rights of Medric Cecil Mills, Jr. and was a proximate cause of his death.

121.    The deliberate decision making and conduct of Defendants Lt. Davis, Murphy, Martin, Dennis and Jones, as trained firefighter/EMT/paramedic was so egregious, outrageous and wrong that it shocks the conscious.

122.    As a direct and proximate cause of Defendants Lt. Davis, Murphy, Martin, Dennis and Jones adherence to the District of Columbia's constitutionally infirm custom, policy and practice, deliberate indifference, and conscious disregard for Mr. Mills' life and liberty, as described above, Medric Cecil Mills, Jr. suffered a violation of his constitutional rights, conscious physical pain and suffering, mental anguish, and injuries that resulted in his death.

123.    Defendants Lt. Davis, Dennis, Murphy, Martin and Jones also acted with a willful disregard for the personal and constitutional rights of Medric C. Mills, Jr. to life and liberty by knowingly failing to provide him with any emergency medical care.

124.    With full knowledge that Mr. Mills needed emergency medical care, refusing to provide that care, and having the training and equipment resources necessary to save his life, the Defendants' conduct was deliberately indifferent, outrageous, extreme, shocking and evidenced a complete and utter disregard for Mr. Mills' constitutional right to life and liberty.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully demand judgment against Defendants Davis, Murphy, Martin, Dennis and Jones and the District of Columbia, jointly and severely, in the full and just amount of Seven Million Seven Hundred Thousand Dollars, ($7,700,000.00), plus interests and costs, as well as punitive damages, jointly and severely, in the full and just amount of Seven Million Seven Hundred Thousand Dollars ($7,700,000.00), plus interests and costs.

### COUNT III
### VIOLATION OF 42 U.S.C. § 1983
### (DEFENDANTS JANE DOE #1, #2, #3 AND #4)

Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 124 above and further alleges:

125.    On or about January 25, 2014, Defendants Jane Doe #1, Jane Doe #2, Jane Doe #3, and Jane Doe #4 were employed by Defendant District of Columbia as the 911 call taker, lead fire dispatcher, and 2 EMS radio operators, respectively, and at all times they were acting under color of law.

126.    As the 911 call taker, Jane Doe #1 had a duty to answer and process the 911 call utilizing emergency dispatch protocols through a computerized assisted emergency dispatching system for medical and fire incidents.

127.    As the lead fire dispatcher, Jane Doe #2 had a duty to assign the appropriate units to respond to emergency requests for medical or fire services and to ensure that the correct

response plans are dispatched on each incident and to monitor unit availability for the next emergency in the city.

128.    As EMS radio operators, Jane Doe #3 and Jane Doe #4 had a duty to ensure that each unit responded to the assigned incident and a duty to relay all pertinent information.

129.    Upon information and belief Jane Doe #3 monitored the NE/SE quadrants of the city and Jane Doe #4 monitored the NW/SW quadrants of the city upon information and belief.

130.    At all times relevant, Jane Doe #1, 2, 3, and 4 had a duty to obtain and timely relay accurate information regarding the location of a medical emergency and knew that a failure to do so increased response times, created a high likelihood of serious injury and death and was likely to deprive persons including Mr. Mills of their right to life and liberty, in violation of the 5th Amendment of the United States Constitution.

131.    Defendants Jane Doe #1, 2, 3, and 4 acted with a willful disregard for the personal and constitutional rights of Medric C. Mills, Jr. with full knowledge that the decedent, Mr. Mills, needed emergency medical care, and failed to take appropriate steps to assure the ambulance or medic unit traveled to the correct address timely. The Defendants' conduct was deliberately indifferent, outrageous, extreme, shocking and evidenced a complete and utter disregard for Mr. Mills' constitutional right to life and liberty.

132.    The violation of Medric Cecil Mills, Jr.'s constitutional rights by Jane Doe #1, 2, 3, and 4 was a proximate cause and a substantial factor of the death of Medric Cecil Mills, Jr.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully demand judgment against Defendants Jane Doe #1, 2, 3, and 4 and the District of Columbia, jointly and severely, in the full and just amount of Seven Million Seven Hundred Thousand Dollars ($7,700,000.00), plus interests and costs, as well as punitive damages, jointly and severely, in the full and just

amount of Seven Million Seven Hundred Thousand Dollars ($7,700,000.00), plus interests and

costs.

## COUNT IV
## AFFIRMATIVE NEGLIGENCE
## (DEFENDANT GARRETT THOMAS MURPHY)

Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1

through 132 above and further alleges:

133.    Defendant Garrett Thomas Murphy was a senior firefighter/EMT/paramedic

employed by Defendant District of Columbia acting within the scope of his employment.

134.    At all times relevant, and on January 25, 2014, Defendant Murphy had a sworn

duty to "faithfully execute the laws of the United States of America and the District of Columbia

and . . . to the best of [his] ability, preserve, protect and defend the Constitution of the United

States, and [to] faithfully discharge the duties of the office . . ."

135.    Upon information and belief, he was trained in CPR and knew how to operate an

AED at all times relevant on January 25, 2014.

136.    At all times relevant and on January 25, 2014 Defendant Murphy had a duty to

deliver pre-hospital emergency medical care to persons known to be in need, regardless of

whether they were dispatched to the scene.

137.    With full knowledge that a man was down across the street from the fire station

and required emergency assistance, Defendant Murphy exited the fire station and instead of

crossing the street to render emergency care, he chose to attend to a personal matter.

138.    Defendant Murphy went to his personal vehicle, retrieved his personal items

including books to study for his promotion exam.

139.   At no time while he was outside the fire station attending to personal matters did he render any aid to Mr. Mills, the deceased.

140.   Instead he entered the building and retired to the bunkroom to study for his promotion exam.

141.   As such, Defendant Murphy breached his duty to provide pre-hospital emergency care by choosing to attend to personal errands rather than promptly dispatching to the scene.

142.   This breach of duty by Defendant Murphy violated Mr. Mills' constitutional right to life and liberty and worsened Mr. Mills' condition which was a substantial factor and a proximate cause of Mr. Mills' death.

143.   Defendant Murphy acted with a willful disregard for the personal and constitutional rights of Medric C. Mills, Jr. by knowingly failing to provide him with any emergency medical care and electing to run a personal errand to his car so he could study for a promotion exam which was a proximate cause and substantial factor in causing Mr. Mills' death.

144.   With full knowledge that Mr. Mills needed emergency medical care, refusing to provide that care, and having the training and equipment resources necessary to save his life, Defendant Murphy's conduct was deliberately indifferent, outrageous, extreme, shocking and evidenced a complete and utter disregard for Mr. Mills' constitutional right to life and liberty.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully demand judgment against Defendant Murphy and Defendant District of Columbia, jointly and severely, in the full and just amount of Seven Million Seven Hundred Thousand Dollars ($7,700,000.00), plus interests and costs, as well as punitive damages, jointly and severely, in the full and just amount of Seven Million Seven Hundred Thousand Dollars ($7,700,000.00), plus interests and costs.

## COUNT V - WRONGFUL DEATH ACTION
### (ALL DEFENDANTS)

Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 144

and further allege that this action arises under Title 16 § 2701 *et seq.* of the District of Columbia

Code, and is brought by Plaintiffs Marie. N. Mills and Medric C. Mills, III, as the co-personal

and legal representatives of the Estate of Medric C. Mills, Jr, and on behalf of Mr. Mills' widow,

Sandra Ann Mills and themselves, as his children.

145.   At the time of his death, Mr. Mills was married to Sandra Ann Mills, and they had

two children: Plaintiffs Marie N. Mills and Medric C. Mills, III.

146.   At the time of his death, Medric Cecil Mills, Jr. was 77 years old and an employee

of the District of Columbia Department of Parks and Recreation.

147.   Medric Cecil Mills' death was a direct and proximate result of the Defendants

constitutional violations, violations of 42 U.S.C. § 1983, and as set forth herein.

148.   The above referenced statutory violations, constitutional violations, and wrongful

conduct as set forth above, were a proximate cause and substantial factor in causing the death of

Medric Cecil Mills, Jr.

149.   As a result of the Defendants' statutory violations, constitutional violations,

wrongful conduct all fully set forth herein, the Estate of Medric C. Mills, Jr., his heirs, including

his wife Sandra Ann Mills, and his two children, Plaintiffs Marie N. Mills and Medric C. Mills,

III, have lost Mr. Mills' personal and parental services, counsel, assistance, advice, protection

and care, incurred medical bills, loss of income, funeral and burial expenses.

150.   As set forth herein, the Defendants acted with a willful disregard for the personal

and constitutional rights of Medric C. Mills, Jr.

151.   The Defendants' conduct was deliberately indifferent, outrageous, extreme, shocking and evidenced a complete and utter disregard for Mr. Mills' constitutional right to life and liberty and was a proximate cause and substantial factor of Mr. Mills' death.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully demand judgment against all Defendants, jointly and severely, in the full and just amount of Seven Million Seven Hundred Thousand Dollars ($7,700,000.00), plus interests and costs, as well as punitive damages, jointly and severely, in the full and just amount of Seven Million Seven Hundred Thousand Dollars ($7,700,000.00), plus interests and costs.

## COUNT VI- SURVIVAL ACTION
### (ALL DEFENDANTS)

Plaintiffs incorporate by reference paragraphs 1 through 151 and further allege that this action arises under the District of Columbia Survival Statute, Title 12 § 101 *et seq.* of the District of Columbia Code, and is brought by Plaintiffs Marie. N. Mills and Medric C. Mills, III, as co-personal and legal representatives of the Estate of Medric C. Mills, Jr.

152.   As a direct and proximate result of the Defendants' statutory and constitutional violations, wrongful conduct as fully set forth herein Medric C. Mills, Jr. died, sustained conscious pain and suffering from the time of his collapse until the time of his death, and fear of imminent death, incurred medical and hospital expenses, and incurred financial losses as a result of the Defendants negligence, including but not limited to loss of future earnings.

153.   The Defendants acted with a willful disregard for the personal and constitutional rights of Medric C. Mills, Jr. as set forth above that deprived Mr. Mills of his constitutional rights.

154.   The Defendants' conduct as set forth above was deliberately indifferent, outrageous, extreme, shocking and evidenced a complete and utter disregard for Mr. Mills' constitutional right to life and liberty.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully demand judgment against all Defendants, jointly and severely, in the full and just amount of Seven Million Seven Hundred Thousand Dollars ($7,700,000.00), plus interests and costs, as well as punitive damages, jointly and severely, in the full and just amount of Seven Million Seven Hundred Thousand Dollars ($7,700,000.00), plus interests and costs.

**COUNT VII – ATTORNEY'S FEES**
**(ALL DEFENDANTS)**

Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 154 above and further alleges:

155.   Defendants are liable to Plaintiffs for attorney's fees under 42 U.S.C. § 1988 ("The Civil Rights Attorney Fees Award Act of 1976").

156.   Plaintiffs seek an award of attorney fees under 42 U.S.C. § 1988 ("The Civil Rights Attorney Fees Award Act of 1976").

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants and the award of attorney's fees in the full and just amount as allowed under law plus expenses, interest and costs.

32

Respectfully Submitted,

**THE COCHRAN FIRM**

By: _____

Karen E. Evans, Esq., #426067
The Cochran Firm
1100 New York Avenue, N.W.
Suite 340, West Tower
Washington, DC 20005
Telephone:  (202) 682-5800
Fax:  (202) 408-8851
kevans@cochranfirm.com

## JURY TRIAL REQUEST

Plaintiffs, by and through counsel respectfully request a trial by jury.

*Karen E. Evans*

Karen E. Evans

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| **MARIE N. MILLS, individually and as a Co-Personal Representative of the Estate of Medric C. Mills, Jr. and on behalf of SANDRA ANN MILLS** )<br><br>**and** )<br><br>**MEDRIC C. MILLS, III, individually and as Co-Personal Representative of the Estate of Medric C. Mills, Jr. and on behalf of SANDRA ANN MILLS,** )<br><br>*Plaintiffs,* )<br>**v.** )<br><br>**DISTRICT OF COLUMBIA,** *et al.* )<br><br>*Defendants.* ) | **2015 CA 004004 B**<br>**Judge RONNA BECK**<br>**Initial Status Conf. 9/4/2015** |

## PRAECIPE OF APPEARANCE

The Clerk of the Court will please enter the appearance of Assistant Attorney General Aaron J. Finkhousen on behalf of the Defendant District of Columbia in the above-captioned matter.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE

Deputy Attorney General, Civil Litigation Division

JONATHAN H. PITTMAN
Acting Assistant Deputy Attorney General, Civil Litigation
Division

/s/ Shana L. Frost
SHANA L. FROST [458021]
Acting Chief, Civil Litigation Division Section III

/s/Martha J. Mullen
MARTHA J. MULLEN [419036]
Senior Assistant Attorney General
Office of the Attorney General
441 Fourth Street, NW, Suite 630 South
Washington, D.C.  20001
(202) 724-6644
martha.mullen@dc.gov

/s/ Aaron J. Finkhousen
AARON J. FINKHOUSEN [1010044]
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, NW, Suite 630 South
Washington, D.C. 20001
(202) 724-7334 (direct)
(202) 730-0493 (fax)
aaron.finkhousen@dc.gov

**CERTIFICATE OF SERVICE**

This certifies that on this **26th day of June 2015** a true and correct copy of the

Praecipe of Appearance of Assistant Attorney General Aaron J. Finkhousen was filed

with the Clerk of the Court using the CasefileXpress system, which will send notice to:

Karen E. Evans, Esq.
The Cochran Firm

1100 New York Avenue
Suite 340, West Tower
Washington, DC  20005
kevans@cochranfirm.com

/s/ Aaron J. Finkhousen
Aaron J. Finkhousen

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| **MARIE N. MILLS, individually and as a Co-Personal Representative of the Estate of Medric C. Mills, Jr. and on behalf of SANDRA ANN MILLS** | ) ) ) ) ) ) | |
| **and** | ) ) | **2015 CA 004004 B**<br>**Judge RONNA BECK**<br>**Initial Status Conf. 9/4/2015** |
| **MEDRIC C. MILLS, III, individually and as Co-Personal Representative of the Estate of Medric C. Mills, Jr. and on behalf of SANDRA ANN MILLS,** | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| **v.** | ) ) | |
| **DISTRICT OF COLUMBIA**, *et al.* | ) ) ) | |
| *Defendants*. | ) ) | |

## PRAECIPE OF APPEARANCE

The Clerk of the Court will please enter the appearance of Senior Assistant Attorney

General on behalf of the Defendant District of Columbia in the above-captioned matter.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

JONATHAN H. PITTMAN
Acting Assistant Deputy Attorney General, Civil Litigation
Division

/s/ Shana L. Frost
SHANA L. FROST [458021]
Acting Chief, Civil Litigation Division Section III

/s/Martha J. Mullen
MARTHA J. MULLEN [419036]
Senior Assistant Attorney General
Office of the Attorney General
441 Fourth Street, NW, Suite 630 South
Washington, D.C.  20001
(202) 724-6644
martha.mullen@dc.gov

## CERTIFICATE OF SERVICE

This certifies that on this **26th day of June 2015** a true and correct copy of the

Praecipe of Appearance of Senior Assistant Attorney General Martha J. Mullen was

filed with the Clerk of the Court using the CasefileXpress system, which will send

notice to:

Karen E. Evans, Esq.
The Cochran Firm
1100 New York Avenue
Suite 340, West Tower
Washington, DC  20005
kevans@cochranfirm.com

**Filed**
**D.C. Superior Court**
**07/06/2015 13:45PM**
**Clerk of the Court**

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### Civil Division

|  |  |
|---|---|
| ) | |
| **MARIE N. MILLS, individually and as** ) | |
| **A Co-Personal Representative of the** ) | |
| **Estate of Medric C. Mills, Jr. and on** ) | |
| **behalf of SANDRA ANN MILLS** ) | |
| ) | **2015 CA 004004 B** |
| **and** ) | **Judge RONNA BECK** |
| ) | **Initial Status Conference: Sept. 4, 2015** |
| **MEDRIC C. MILLS, III, individually** ) | |
| **and as Co-Personal Representative of** ) | |
| **the Estate of Medric C. Mills, Jr. and on** ) | |
| **behalf of SANDRA ANN MILLS,** ) | |
| ) | |
| *Plaintiffs,* ) | |
| **v.** ) | |
| ) | |
| **DISTRICT OF COLUMBIA,** *et al.* ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

### <u>PRAECIPE OF APPEARANCE</u>

The Clerk of the Court will please enter the appearance of Assistant Attorney General

Douglas S. Rosenbloom on behalf of the Defendant George R. Martin in the above-captioned

matter.

Dated: July 6, 2015                    Respectfully submitted,

                                       KARL A. RACINE
                                       Attorney General for the District of Columbia

                                       ELIZABETH SARA GERE
                                       Acting Deputy Attorney General
                                       Public Interest Division

                                       */s/ Douglas S. Rosenbloom*
                                       DOUG ROSENBLOOM [D.C. Bar No. 1016235]
                                       Assistant Attorney General
                                       441 Fourth Street, NW
                                       Sixth Floor South

Washington, DC 20001
Telephone: (202) 724-1342
Facsimile: (202) 730-0623
Email: douglas.rosenbloom@dc.gov


## CERTIFICATE OF SERVICE

This certifies that on this **6th** day of **July 2015**, a true and correct copy of the Praecipe of

Appearance of Assistant Attorney General Douglas S. Rosenbloom was filed with the Clerk of

the Court using the CasefileXpress system, which will send notice to all counsel of record.


*/s/ Douglas S. Rosenbloom*
DOUG ROSENBLOOM [D.C. Bar No. 1016235]
Assistant Attorney General
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
Telephone: (202) 724-1342
Facsimile: (202) 730-0623
Email: douglas.rosenbloom@dc.gov

Filed
D.C. Superior Court
07/07/2015 14:51PM
Clerk of the Court

**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

|  |  |
|---|---|
| ) | |
| **MARIE N. MILLS, individually and as** ) | |
| **A Co-Personal Representative of the** ) | |
| **Estate of Medric C. Mills, Jr. and on** ) | |
| **behalf of SANDRA ANN MILLS** ) | |
| ) | **2015 CA 004004 B** |
| **and** ) | **Judge RONNA BECK** |
| ) | **Initial Status Conference: Sept. 4, 2015** |
| **MEDRIC C. MILLS, III, individually** ) | |
| **and as Co-Personal Representative of** ) | |
| **the Estate of Medric C. Mills, Jr. and on** ) | |
| **behalf of SANDRA ANN MILLS,** ) | |
| ) | |
| *Plaintiffs,* ) | |
| **v.** ) | |
| ) | |
| **DISTRICT OF COLUMBIA,** *et al.* ) | |
| ) | |
| *Defendants.* ) | |

<u>**PRAECIPE OF APPEARANCE**</u>

The Clerk of the Court will please enter the appearance of Assistant Attorney General

Douglas S. Rosenbloom on behalf of the Defendant David Richard Dennis in the above-

captioned matter.

Dated: July 7, 2015                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ELIZABETH SARA GERE
Acting Deputy Attorney General
Public Interest Division

TONI MICHELLE JACKSON
Chief, Equity Section

*/s/ Douglas S. Rosenbloom*
DOUG ROSENBLOOM [D.C. Bar No. 1016235]
Assistant Attorney General
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
Telephone: (202) 724-1342
Facsimile: (202) 730-0623
Email: douglas.rosenbloom@dc.gov

## CERTIFICATE OF SERVICE

This certifies that on this **7th** day of **July 2015**, I filed a true and correct copy of the Praecipe of

Appearance of Assistant Attorney General Douglas S. Rosenbloom with the Clerk of the Court

using the CasefileXpress system, which will send notice to all counsel of record.

*/s/ Douglas S. Rosenbloom*
DOUG ROSENBLOOM [D.C. Bar No. 1016235]
Assistant Attorney General
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
Telephone: (202) 724-1342
Facsimile: (202) 730-0623
Email: douglas.rosenbloom@dc.gov

Filed
D.C. Superior Court
07/08/2015 16:30PM
Clerk of the Court

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| MARIE N. MILLS, individually and as ) <br> Co-Personal Representative of the Estate of ) <br> Medric C. Mills, Jr., and on behalf of ) <br> SANDRA ANN MILLS ) <br> ) <br> and ) <br> ) <br> MEDRIC C. MILLS, III, individually and as ) <br> Co-Personal Representative of the Estate of ) <br> Medric C. Mills, Jr., and on behalf of ) <br> SANDRA ANN MILLS ) <br> ) <br>    Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> DISTRICT OF COLUMBIA, et al. ) <br> ) <br>    Defendants. ) <br> ) | Case No.: 2015 CA 004004 B <br> Judge Ronna Beck <br> Next Scheduled Event: Initial <br> Status Conference – 9/4/15 |

## <u>AFFIDAVIT OF SERVICE</u>

COMES NOW Karen E. Evans, Esquire, counsel for plaintiff, and deposes as follows:

1.     On June 18, 2015, a copy of the Complaint, Summons and Initial Order were served on Defendant the District of Columbia, c/o The Honorable Muriel Bowser, Mayor of the District of Columbia and the Office of the Attorney General for the District of Columbia, via certified mail/return receipt requested, as more fully appears on the Receipt for Certified Mail, Article No. 7011 0470 0003 0313 0862, attached to this Affidavit.

2.     On June 23, 2015, Gail Rivers, an agent, servant and/or employee of the Office of the Attorney General for the District of Columbia received and signed for

aforementioned documents as more fully appears on the return receipt attached to this Affidavit.

Respectfully submitted,

**THE COCHRAN FIRM**

Karen E. Evans            #EV00337
1100 New York Avenue, N.W.
Suite 340 – West Tower
Washington, DC  20005
Telephone:  (202) 682-5800
Fax:  (202) 408-8852
kevans@cochranfirm.com
*Attorney for Claimant*

SUBSCRIBED AND SWORN TO before me, the undersigned Notary Public, this 7th day of July, 2015.

NOTARY PUBLIC

MICHELLE RIORDAN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires May 14, 2019

My Commission Expires: _____



**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The Hon. Muriel Bowser
Mayor of the District of Columbia
c/o Darlene Fields, Tonia Robinson or Gail Rivers
Civil Litigation Division
Office of the Attorney General
441 Fourth Street, N.W., 600 South
Washington, DC 20002

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Gail Rivers_      ☐ Agent
                     ☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery
_Gale Rivers_                      6/23/15

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☑ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)           ☐ Yes

2. Article Number
   (Transfer from service label)

7011 0470 0003 0313 0862

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

Filed
**D.C. Superior Court
07/08/2015 16:41PM
Clerk of the Court**

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| MARIE N. MILLS, individually and as<br>Co-Personal Representative of the Estate of<br>Medric C. Mills, Jr., and on behalf of<br>SANDRA ANN MILLS<br><br>and<br><br>MEDRIC C. MILLS, III, individually and as<br>Co-Personal Representative of the Estate of<br>Medric C. Mills, Jr., and on behalf of<br>SANDRA ANN MILLS<br><br>       Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA, et al.<br><br>       Defendants. | Case No.: 2015 CA 004004 B<br>Judge Ronna Beck<br>Next Scheduled Event: Initial<br>Status Conference – 9/4/15 |

### AFFIDAVIT OF SERVICE

COMES NOW Karen E. Evans, Esquire, counsel for plaintiff, and deposes as follows:

1.      On June 18, 2015, a copy of the Complaint, Summons and Initial Order were served on Defendant the District of Columbia, c/o Karl Racine, Esq. and the Office of the Attorney General for the District of Columbia, via certified mail/return receipt requested, as more fully appears on the Receipt for Certified Mail, Article No. 7011 0470 0003 0313 5003, attached to this Affidavit.

2.      On June 23, 2015, Gail Rivers, an agent, servant and/or employee of the Office of the Attorney General for the District of Columbia received and signed for

aforementioned documents as more fully appears on the return receipt attached to this

Affidavit.

Respectfully submitted,

**THE COCHRAN FIRM**

Karen E. Evans                    #EV00337
1100 New York Avenue, N.W.
Suite 340 – West Tower
Washington, DC  20005
Telephone:  (202) 682-5800
Fax:  (202) 408-8852
kevans@cochranfirm.com
*Attorney for Claimant*

    SUBSCRIBED AND SWORN TO before me, the undersigned Notary Public,
this _7th_ day of July, 2015.

NOTARY PUBLIC

MICHELLE RIORDAN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires May 14, 2019

My Commission Expires: _____



2

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Karl Racine, Esq.
Attorney General
c/o Darlene Fields, Tonia Robinson or Gail Rivers
Civil Litigation Division
Office of the Attorney General
441 Fourth Street, N.W., 600 South
Washington, DC 20002

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X *Gail Rivers*   ☐ Agent
   ☐ Addressee

B. Received by ( *Printed Name* )   C. Date of Delivery
*Gale Rivers*   6/23/15

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered   ☑ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)   ☐ Yes

2. Article Number
   (*Transfer from service label*)

7011 0470 0003 0313 5003

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

MARIE N. MILLS, individually and as )
Co-Personal Representative of the Estate of )
Medric C. Mills, Jr., and on behalf of )
SANDRA ANN MILLS )
  )
and )
  )
MEDRIC C. MILLS, III, individually and as )    Case No.:  2015 CA 004004 B
Co-Personal Representative of the Estate of )    Judge Ronna Beck
Medric C. Mills, Jr., and on behalf of )    Next Scheduled Event: Initial
SANDRA ANN MILLS )    Status Conference – 9/4/15
  )
        Plaintiffs, )
  )
v. )
  )
DISTRICT OF COLUMBIA, et al. )
  )
        Defendants. )
  )

## AFFIDAVIT OF SERVICE

      COMES NOW Karen E. Evans, Esquire, counsel for plaintiff, and deposes as follows:

      1.      On June 18, 2015, a copy of the Complaint, Summons and Initial Order were served on Defendant DCFEMS, c/o the Office of the Attorney General for the District of Columbia, via certified mail/return receipt requested, as more fully appears on the Receipt for Certified Mail, Article No. 7011 0470 0003 0313 4884, attached to this Affidavit.

      2.      On June 23, 2015, Gail Rivers, an agent, servant and/or employee of the Office of the Attorney General for the District of Columbia received and signed for

aforementioned documents as more fully appears on the return receipt attached to this Affidavit.

Respectfully submitted,

**THE COCHRAN FIRM**

Karen E. Evans                #EV00337
1100 New York Avenue, N.W.
Suite 340 – West Tower
Washington, DC  20005
Telephone:  (202) 682-5800
Fax:  (202) 408-8852
kevans@cochranfirm.com
*Attorney for Claimant*

SUBSCRIBED AND SWORN TO before me, the undersigned Notary Public, this 7th day of July, 2015.

NOTARY PUBLIC

MICHELLE RIORDAN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires May 14, 2019

My Commission Expires: _____



| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Gail Rivers_  ☐ Agent  ☐ Addressee<br>B. Received by *(Printed Name)*  C. Date of Delivery<br>_Gale Rivers_  6/23/15 |
| 1. Article Addressed to:<br><br>DCFEMS<br>c/o Darlene Fields, Tonia Robinson or Gail Rivers<br>Civil Litigation Division<br>Office of the Attorney General<br>441 Fourth Street, N.W., 600 South<br>Washington, DC  20002 | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No<br><br>3. Service Type<br>☑ Certified Mail  ☐ Express Mail<br>☐ Registered  ☑ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)*  ☐ Yes |
| 2. Article Number<br>   *(Transfer from service label)* | 7011 0470 0003 0313 4884 |

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540